# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FRIDAY JAMES,** | : | **NO. 11-913** |
| **d/b/a FRIKA TAX SERVICES,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM

**GENE E.K. PRATTER, J.**                                                                 **APRIL 12, 2011**

The United States of America filed this civil action against Friday O. James, seeking to permanently enjoin Mr. James from preparing or filing income tax returns for other tax filers. The Government invokes Sections 7402, 7407, and 7408 of Title 26 of the United States Code as authority for its effort. Presently before the Court is the Government's application for a temporary restraining order against Mr. James to temporarily enjoin him under 26 U.S.C. §§ 7407 and 7408 from acting as a tax preparer on behalf of other tax filers. In the alternative, the Government moves to temporarily enjoin Mr. James from preparing federal income tax returns and amended returns that claim first-time homebuyer credits, Schedule C expenses, or certain Schedule A expenses and miscellaneous deductions, and for the Court to require Mr. James to provide notice to his past and present clients of any injunctive order issued by this Court. *See* Gov't Mot. (Docket No. 3); Gov't Mem. of Law (Docket No. 2); Gov't Proposed Findings of Fact and Conclusions of Law (hereinafter "Gov't Suppl.") (Docket No. 12).

The Court held a hearing on the Motion on February 28, 2011, during which the parties presented arguments and evidence, and the Government called eight witnesses to testify. During the hearing, the parties indicated their accord that it is appropriate given the circumstances here for the Court only to consider the Government's alternative injunctive relief, and this was subsequently confirmed in writing to this Court.[1] Accordingly, the Court only determines the issue of the Government's alternative injunctive relief.

For the reasons and on the basis stated below, the Court grants the Government's request for a temporary restraining order to enjoin Mr. James from engaging in certain conduct to the extent described in this Memorandum.

## LEGAL STANDARD

In deciding a motion for injunctive relief, such as a temporary restraining order, under 26 U.S.C. §§ 7407, 7408, the Court considers both statutory and equitable criteria. The statutory factors arise under Sections 7407 and 7408, which authorize district courts to provide injunctive relief to enforce the United States Internal Revenue Code (the "IRC") consistent with the Court's jurisdiction pursuant to 26 U.S.C. § 7402(a).[2] Specifically, in order to issue an injunction a court

_____

[1] Following the hearing, the Government submitted its proposed findings of fact and a proposed form of order providing for the Government's alternative injunctive relief. *See* Gov't Suppl. Although Mr. James was given an opportunity to submit proposed findings of fact after the hearing, he did not do so. However, in a letter to the Court with a copy to the Government, dated March 8, 2011, his counsel articulated that Mr. James had no objection to the form of the Government's proposed preliminary injunction order, except that he requested that Mr. James be permitted to deliver a copy of the Court's injunctive order by hand or electronic transmission in lieu of postal mail because of the expense of postal delivery.

[2] 26 U.S.C. § 7402(a) states:

    The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the

2

must find under 26 U.S.C. § 7407(b) that: (1) the defendant is a tax preparer, (2) conduct is within one of the four areas of conduct identified under Section 7407(b)(1), and (3) injunctive relief is appropriate to prevent the recurrence of the proscribed conduct. *See United States v. Franchi*, 756 F. Supp. 889 (W.D. Pa. 1991).[3] Similarly, before granting injunctive relief, the Court must find under Section 7408(b) that: (1) the defendant engaged in certain prohibited conduct under Section 7408(c), and (2) injunctive relief is appropriate to prevent the recurrence of such conduct. *See United States v. Bell*, 238 F. Supp. 2d 696, 705 n.8 (M.D. Pa. 2003), *aff'd on other grounds*, 414 F.3d 474 (3d Cir. 2005).[4]

---

enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

[3] 26 U.S.C. § 7407(b) provides:
In any action under subsection (a), if the court finds--
(1)     that a tax return preparer has--
    (A)     engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
    (B)     misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as a tax return preparer,
    (C)     guaranteed the payment of any tax refund or the allowance of any tax credit, or
    (D)     engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and

(2)     that injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin such person from further engaging in such conduct. If the court finds that a tax return preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of this subsection and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as a tax return preparer.

[4] 26 U.S.C. § 7408(b) states:
In any action under subsection (a), if the court finds—
    (1) that the person has engaged in any specified conduct, and
    (2) that injunctive relief is appropriate to prevent recurrence of such conduct,

Despite the Government's contention that the Court need only consider these statutory factors because both IRC provisions expressly authorize injunctive relief, the Court also considers the customary equitable criteria for granting injunctive relief.

First, the Court finds it appropriate to consider the equitable criteria in order to determine the propriety of injunctive relief in preventing the recurrence of conduct, which subparts (b)(2) of Sections 7407 and 7408 require. *See Franchi*, 756 F. Supp. 889; *United States v. Venie*, 691 F. Supp. 834 (M.D. Pa. 1988).[5]

Second, the Court does not find that the statute expressly precludes the Court's consideration of the general equitable factors, because neither Section 7407 nor Section 7408 limit the Court's jurisdiction in equity. Indeed, unless a statute explicitly provides to the contrary, district courts must consider the traditional equitable standard when deciding to grant equitable relief. *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001) ("[W]hen district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise."); *Weinberger v. Romero-Bacelo*, 456 U.S. 305, 313 (1982) ("The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to

---

the court may enjoin such person from engaging in such conduct or in any other activity subject to penalty under this title.

[5] The Court recognizes that this contradicts the specialized standard applied by some courts outside the Third Circuit to determine the propriety of an injunction under Sections 7407(b)(2) and 7408(b)(2). Those courts consider the same factors that are applied to injunctions issued under the securities laws, which include: "the defendant's having previously been found liable for illegal conduct, the degree of scienter, whether the infraction is an isolated occurrence, whether the defendant maintains that his past conduct was blameless, and whether his occupation would place him in a position where future violations could be anticipated." *United States. v. Buttorff*, 761 F.2d 1056, 1062 (5th Cir. 1985) (citing *SEC v. Commw. Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978)); *see also United States. v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004); *United States v. Kaun*, 827 F.2d 1144, 1149-50 (7th Cir. 1987).

do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." (citations omitted)); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."). "Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established [equity] principles." *Romero-Bacelo*, 456 U.S. at 313 (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).

Here, the language of Sections 7407 and 7408 does not explicitly provide that Congress intended to mandate injunctive relief under a particular set of circumstances and thereby displace the Court's discretion when it acts in equity. Both Sections use permissive terms, specifically, "the court *may* enjoin," as well as language that compels the Court to exercise its discretion in determining "that the injunctive relief is *appropriate* to prevent the recurrence of such conduct." Such statutory language suggests the Court's equitable discretion is unaffected and that the customary equitable standard applies in considering the Government's Motion. *See Flynn v. United States*, 786 F.2d 586, 591 (3d Cir. 1986) (finding that the language of Section 6213(a) of the IRC, 26 U.S.C. § 6213(a), by providing that certain activities "*may* be enjoined," was indicative that "equitable relief is not mandatory in all such cases, but instead lies within the discretion of the court, [and thus] there is no reason to cast off those principles that traditionally have informed the exercise of a court's broad equity powers.").[6]

---

[6] Furthermore, the Court's determination that the equitable standards are appropriately employed here is consistent with the approach followed by other courts within this Circuit. *See Franchi*, 756 F. Supp. 889 (applying both the statutory and equitable standards in a matter involving 26 U.S.C. §§ 7402, 7407); *Venie*, 691 F. Supp. 834 (applying both the statutory and equitable

Accordingly, the Court shall proceed to consider and apply the equitable standard in determining whether the injunctive relief "is appropriate" to prevent recurrent conduct pursuant to Sections 7407 and 7408. The equitable standard requires the Court to evaluate four factors: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009) (quoting *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356-357 (3d Cir. 2007)).

---

standards in a matter involving 26 U.S.C. §§ 7402, 7407); *Bell*, 238 F. Supp. 2d 696 (applying the equitable standard in a matter involving 26 U.S.C. §§ 7402, 7408), *aff'd on other grounds*, 414 F.3d 474; *United States v. Updegrave*, Civ. A. 95-6054, 1995 WL 606608 (E.D. Pa. Oct. 12, 1995) (applying the equitable standard pursuant to 26 U.S.C. § 7402 and 28 U.S.C. § 1340); *see also Bell*, 414 F.3d 474 at n.4 (commenting in dicta, in deciding an appeal of an injunctive order issued pursuant to 26 U.S.C. §§ 7402, 7408, that the standard for a preliminary injunction is the equitable standard).

## FINDINGS OF FACT[7]

Based on the evidence and the parties' arguments, the Court finds as follows:

---

[7] The facts presented in this Memorandum are based upon witness testimony at the hearing held on the Motion and from affidavits, declarations, and other documentary evidence that the parties submitted and that the Court admitted.

At the hearing, the Government called eight witnesses. Four of the witnesses are IRS revenue agents or tax compliance officers whose testimony, in part, included statements made by some of Mr. James's clients to those agents in connection with the audits of those clients' returns. Although the Government conceded at the hearing such testimony would constitute hearsay under the Federal Rules of Evidence, it argues that such testimony is admissible in a preliminary injunction hearing. *See also* Gov't Trial Mem. at 2-5 (Docket No. 6). Mr. James's counsel agreed at the outset of the hearing that evidentiary standards may be less stringent in a preliminary injunction hearing, but explicitly reserved the right to raise arguments concerning the weight that should be accorded to hearsay evidence and other prejudicial concerns involving such evidence.

To the extent that Mr. James objects to the admission of certain evidence on the basis of hearsay, the Court nonetheless recognizes that evidence that might constitute hearsay is admissible in a preliminary injunction hearing. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (recognizing, consistent with other courts of appeal, that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." (citation omitted)). Concomitant with this admissibility standard, the Court must exercise its discretion in determining the weight accorded to any such hearsay evidence admitted into the record, and the Court's findings here reflect this consideration based on the facts and circumstances of this matter. *Kos*, 369 F.3d at 719 ("District courts must exercise their discretion in 'weighing all the attendant factors, including the need for expedition' to assess whether, and to what extent, affidavits or other hearsay materials are 'appropriate given the character and objectives of the injunctive proceeding.' The weight to which such materials are entitled may of course vary greatly depending on the facts and circumstances of a given case." (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986))); *Startrak Sys., LLC v. Hester*, Civ. No. 07-3203 2007 WL 2705159, *8-*9 (D.N.J. Sept. 13, 2007) (explaining a "court may properly rely on affidavits and hearsay materials in considering a motion for a preliminary injunction"); *see also R.B. ex rel. Parent v. Mastery Charter Sch.*, Civil Action No. 2:10-cv-06722, 2010 WL 5464892, *1 n.3 (E.D. Pa. Dec. 29, 2010) ("Courts have consistently held that the Federal Rules of Evidence do not apply at preliminary injunction hearings. . . . Accordingly, at the preliminary injunction stage, a court may rely on hearsay evidence that would not be admissible at trial." (citations omitted)).

As a separate matter, given the Court's rationale articulated in this Memorandum, the Court determines it is unnecessary to address the Government's position that the Court may draw adverse inferences from Mr. James's assertion of the Fifth Amendment in response to questions on certain subjects raised by the Government's counsel during Mr. James's testimony.

1.     Mr. James operates a business called Frika Tax Services located in Philadelphia, Pennsylvania.

2.     Mr. James prepares federal income tax returns on behalf of his clients for compensation.

3.     Frika Tax Services has several employees who assist Mr. James.

4.     Mr. James completed training online with the Internal Revenue Service ("IRS").

5.     Mr. James has worked for several years in the tax preparation business and previously worked for H&R Block and Liberty Tax Service.

6.     Mr. James's name is used as the tax preparer on tax returns prepared at Frika Tax Service.  Using an Electronic Filing Identification Number ("EFIN"), Mr. James electronically files many of his clients' tax returns.

7.     The IRS is conducting an investigation of Mr. James to determine whether he has engaged in conduct subject to penalty and injunction under 26 U.S.C. §§ 6701, 6694, 7402, 7407. As part of the investigation, IRS revenue agents and tax compliance officers have audited tax returns prepared by Mr. James, conducted interviews with some of Mr. James's clients, and reviewed IRS computer reports reflecting data on Mr. James's return preparations.  Auditing the individual returns prepared by Mr. James has been time and labor intensive; seven to ten revenue agents and tax compliance officers have been assigned to audit returns prepared by Mr. James. Additionally, the IRS executed a search warrant at Frika Tax Services in April 2010.

8.     An IRS revenue agent contacted Mr. James by mail in September 2010 to notify him that he was under investigation for his return preparations and that he may face penalties or injunctive action.

9.     The IRS has identified 717 federal income tax returns that Mr. James electronically filed using his EFIN for the processing year 2009, which processing year includes returns for the 2008 tax year.

      a.     157 of the 717 returns claimed the first-time homebuyer credit (the "FTHB credit"). The IRS audited 26 of those 157 returns claiming the FTHB credit and determined that only one of Mr. James's clients from these 26 returns was entitled to the FTHB credit.

      b.     As of October 7, 2010, IRS records reflect that the IRS disallowed the FTHB credit on 102 returns that Mr. James prepared for the 2008 tax year. The total amount owed for the 102 returns prepared by Mr. James for the 2008 tax year claiming the FTHB credit for taxpayers who did not qualify is $776,500.

10.     The IRS has identified that Mr. James filed 33 amended federal income tax returns that claimed the FTHB credit for the 2008 tax year.

      a.     The IRS audited each of the 33 amended returns and determined that among those 33 returns only two of Mr. James's clients were entitled to the credit claimed on the amended return.

11.     Taxpayers are required to include Form 5405 with their return when they claim a FTHB credit; the Form requires the preparer to list the address and acquisition date for the purchased home that is the subject of the claimed credit.

12.     Mr. James prepared his own personal 2008 federal income tax return in which he claimed the FTHB credit although he did not qualify for it. In connection with that return, he filed a IRS Form 5405 that contained unsubstantiated information. In conducting its

9

investigation, the IRS reviewed real property records for the property reported on Mr. James's Form 5405 and determined that Mr. James never had purchased the referenced property.

13.     Mr. James has claimed FTHB credits on tax returns and filed IRS Forms 5405 that contained unsubstantiated information on behalf of clients who did not qualify for the FTHB credit.

      a.     During its investigation, the IRS reviewed real property records for the properties reported on some of the 5405 Forms that Mr. James prepared on behalf of his clients and determined that the clients never had purchased the properties listed on their respective Forms.

      b.     During the hearing, one witness (E.B.), who testified that she was a client of Mr. James, stated that Mr. James had informed her that she could claim the FTHB credit on her 2008 federal income tax return for a house she had purchased in 2006. When shown the Form 5405 that Mr. James had prepared on her behalf, the witness stated that she was not familiar with the address of the home listed on the Form, and did not own a house listed at that address. She also stated that she did not purchase a home on March, 25, 2009, the date of purchase inserted on the Form. This witness's testimony concerning these facts was credible. Upon reviewing real property records, the IRS confirmed that the witness had never owned the property listed on the Form. After the IRS disallowed the FTHB credit, the witness agreed to pay to the Government $9,485.00 in tax, penalties, and interest for the 2008 tax year.

      c.     Another witness (K.K.) testified that she was a client of Mr. James and had never told him that she had purchased home, although he filed her 2008 federal

income tax return claiming the FTHB credit. The only documents that this witness provided to Mr. James for purposes of preparing her return were her W-2 Form, her identification card, and her driver's license. Upon examining the Form 5405 that Mr. James prepared on her behalf for her 2008 return, the witness stated that she was not familiar with the address of the claimed home and that the purchase date of April 5, 2009 listed on the Form had no significance to her. This witness's testimony concerning these facts was credible. Upon reviewing real property records, the IRS confirmed that the witness had never owned the property listed on the Form. After the IRS disallowed the FTHB credit, the witness agreed to pay to the Government $8,447.00 in tax and interest for the 2008 tax year.

      d.      A tax compliance officer with the IRS (E.G.) who testified as a witness at the hearing, stated that she audited a taxpayer (C.T.) whose 2008 federal income tax return was prepared by Mr. James. During her audit, she determined that the taxpayer had never purchased the property listed on the Form 5405 filed with the 2008 return. This witness's testimony concerning these facts was credible.

      14.      At the hearing, defense counsel submitted into evidence a document concerning the FTHB credit during the cross-examination of a witness (J.H.) who is an IRS revenue agent conducting the IRS investigation of Mr. James. This document was titled "First-Time Homebuyers Have Several Options to Maximize New Tax Credit" and is IRS Bulletin "IR-2009-27," dated March 18, 2009. The document contains the statement: "For people who recently

11

purchased a home or are considering buying in the next few months, there are several different ways they can get this [FTHB] tax credit even if they've already filed their tax return."[8]

15. Several witnesses recounted to the Court that Mr. James made some statements to his clients as to why a client might be able to claim the FTHB credit. One witness (E.G.) testified that Mr. James told one taxpayer that in order to claim the FTHB credit, the taxpayer should use Mr. James's office computer to look up properties that he might be interested in purchasing. Another witness (K.K.) testified that she and Mr. James had a conversation in which she expressed an interest in purchasing a house, and Mr. James indicated that he would file her tax return claiming the FTHB credit and that she would have until the end of the year to purchase the house. The witness further testified that Mr. James contacted a realtor on her behalf to assist her purchase of a home. As previously described, the IRS determined that neither of these taxpayers had purchased the property listed on the Form 5405 submitted with their respective tax returns.

16. Mr. James has filed federal income tax returns on behalf of his clients that contained unrealistic or unreasonable positions for Schedule C expenses and Schedule A expenses and miscellaneous deductions.

    a. The IRS recently audited 19 returns prepared by Mr. James for 2007 through 2009 tax years.

        i. During the audits, taxpayers were provided with the opportunity to substantiate the questioned items that were reported as deductible on the return.

---

[8] Notwithstanding the risk of ambiguity if one reads this document quickly, the evidence presented at the hearing does not support any conclusion that Mr. James may have been or was confused about taxpayer eligibility and filing requirements pertaining to the FTHB credit as a result of the description in this document or similar statements about the FTHB credit.

If a taxpayer was unable to substantiate a deduction without documentation, it was disallowed in some circumstances. In other circumstances, revenue agents have discretion to allow a taxpayer to take a deduction if such a deduction was reasonable.

  ii.  The aforementioned 19 returns audited by the IRS reflected numerous types of Schedule C business expenses, including car and truck expenses, meals, travel and entertainment, personal insurance, repairs and maintenance, office expenses, supplies, taxes and licenses, and other non-deductible items that the IRS auditors determined should be disallowed.

  iii.  The 19 returns reflected numerous types of Schedule A items, including unreimbursed employee expenses, charitable contributions, student loan interest, tuition, and fees, and other non-limited deductions that the IRS auditors determined should be disallowed.

  iv.  The 19 returns reflected credits for taxpayers who did not qualify for the FTHB credit, education credits, and an energy credit.

  v.  Based upon the disallowed credits in the 19 returns, the IRS auditors have proposed a total of $98,885.16 in additional tax, penalties, and interest for the taxpayers associated with the 19 returns.

  vi.  Both an IRS revenue agent (P.R.) who audited four of these taxpayers, and IRS revenue agent (J.H.) who is conducting the IRS investigation of Mr. James credibly testified concerning these facts.

b.      Taxpayers report their deductible employee business expenses, including expenses for vehicles and meals and entertainment, using IRS Form 2106.

c.      The IRS examined data from 2009 federal income tax returns prepared by Mr. James, and 900 of those returns included Form 2106. Based upon a review of the 900 returns, certain patterns were identified in the mileages reported for different taxpayers who had diverse occupations. Over 500 returns among the 900 reported only either "9,500 miles" or "11,500 miles" for business miles, and all but one of those 500 returns reported precisely "1,000 miles" for commuting miles.

d.      The IRS examined data from 2009 federal income tax returns prepared by Mr. James. Based upon a review of those returns, roughly 90 of those returns claimed deductions for "business suits" and cleaning business suits. The IRS considers business suits to be "normal street wear" which is not deductible as an allowable expense.

e.      One witness (E.M.) testified that Mr. James prepared his 2008 and 2009 federal income tax returns; these two returns were among the previously discussed 19 returns that the IRS recently audited. The only documents that this witness provided to Mr. James for purposes of preparing his returns were his W-2 forms, and in 2008, copies of his and his family's social security cards.

        i.      In regards to his and his wife's joint 2008 federal income tax return, the witness testified that he was unaware that Mr. James had filed a Schedule A that claimed $29,445.00 in job expenses, including vehicle expenses (11,500 miles for business miles, 1,000 miles for commuting miles) and meal expenses, and a miscellaneous deduction for $7,752.00 for "BUSINESS SUITS

14

N DRY C." The witness stated that he never informed Mr. James that he had incurred mileage or meal expenses for the 2008 tax year, nor did he provide Mr. James with any documentation concerning such expenses. The witness also did not inform Mr. James that he incurred expenses for business suits and dry cleaning. The witness testified that he customarily wore jeans and a t-shirt to work in 2008 and that his wife wore a uniform to work. He and his wife never informed Mr. James about the number of uniforms that she purchased in 2008. The witness stated he was only aware of incurring ordinary laundry expenses for the clothes that he and his wife wore to work, which expenses are non-deductible.

  ii. In regards to his and his wife's joint 2009 federal income tax return, the same witness testified that he was unaware that Mr. James had filed a Schedule A that claimed a miscellaneous deduction for $2,150.00 for "BUSINESS SUITS N LAUND." The witness testified that he only discussed the fact that he did ordinary laundry with Mr. James and never provided Mr. James with any documentation concerning business suits or laundry.

  iii. This witness's testimony concerning these facts was credible.

 f. A tax compliance officer (R.M.) with the IRS in Lancaster, Pennsylvania, testified at the hearing that he audited two taxpayers (R.W. and V.W.), whose 2008 and 2009 joint federal income tax returns as husband and wife were prepared by Mr. James. During his audit, the officer requested substantiation of certain items claimed on the 2008 and 2009 returns from the taxpayers. As a result of the taxpayers' responses to his inquiries for substantiation of items claimed, the officer determined that certain items on

their 2008 and 2009 returns should be disallowed, including those for unreimbursed

employee expenses, automobile expenses, and expenses for uniforms, shoes, and laundry.

This witness's testimony concerning these facts was credible

17.     Mr. James has filed over 200 federal tax returns during the 2010-2011 filing

season.

## CONCLUSIONS OF LAW

Based upon the evidence presented by the Government and Mr. James, the Court finds

that the criteria for injunctive relief under Sections 7407 and 7408 have been satisfied.

First, the Court finds that Mr. James is an income tax return preparer for purposes of Section

7407(b)(1). A tax return preparer is defined as "any person who prepares for compensation, or

who employs one or more persons to prepare for compensation, any return of tax imposed by this

title or any claim for refund of tax imposed by this title," subject to certain exceptions that are

inapplicable here. 26 U.S.C. § 7701(a)(36). The evidence introduced during the hearing shows

that Mr. James prepared income tax returns for compensation. He operates his business under

the name Frika Tax Services; has filed returns where he is identified as the tax preparer and uses

an EFIN to electronically file client tax returns; and charges clients a fee to prepare returns.

Second, the Court finds that Mr. James has engaged in conduct subject to penalty under

26 U.S.C. §§ 6694(a),(b), which is conduct enumerated in 26 U.S.C. § 7407(b)(1)(A). Section

6694(a) provides that penalties shall be imposed on a tax preparer, if she prepared a tax return

that understates liability, and she knew or reasonably should have known of the liability

understatement. 26 U.S.C. §§ 6694(a). Section 6694(b) also delineates penalties for a tax

preparer who prepares a return that understates liability as a result of that preparer's willful

16

conduct, or reckless or intentional disregard of rules and regulations. 26 U.S.C. §§ 6694(b). As explained above, various facets of the IRS investigation, including audits of and compiled data from tax returns prepared by Mr. James, as well as the testimony of witnesses who were Mr. James's clients, are compelling evidence that Mr. James filed federal income tax returns on behalf of his clients that claimed FTHB credits for taxpayers who did not qualify for the credit, and that claimed Schedule C expenses and Schedule A expenses and deductions that were erroneous, unrealistic or unreasonable. Given the patterns of conduct clearly discernable from such evidence, it follows that Mr. James negligently or willfully understated tax liability on many of the federal income tax returns he prepared for his clients.

Third, the Court finds that Mr. James has engaged in specified conduct under 26 U.S.C. § 7408(b)(1), specifically conduct that is subject to penalty under 26 U.S.C. § 6701. Section 6701 imposes a penalty on any person who prepares tax returns or other documents, when that person knows, or has reason to believe, that such returns or documents will be used in connection with a material matter arising under the internal revenue laws, and that person knows that doing so would result in liability understatement. 26 U.S.C. § 6701(a). Thus, similar to Sections 6694(a) and (b), Section 6701 addresses conduct concerning the preparation of returns or other documents knowing the returns will result in understated tax liability. Consequently, the Court concludes that the previously discussed evidence that shows that Mr. James engaged in conduct subject to penalty under Sections 6694(a) and 6694(b) also shows that Mr. James engaged in specified conduct under Section 6701. As a result, Mr. James meets the criteria of 26 U.S.C. § 7408(b)(1).

17

Fourth, the Court determines upon considering the four equitable factors that injunctive relief is appropriate to prevent the recurrence of such conduct proscribed in Sections 4707(b) and 4708(b). Given the previously discussed conclusion that Mr. James is a tax preparer for purposes of Section 7407(b)(1) and Mr. James's conduct is subject to penalty under 26 U.S.C. §§ 6701, 6694 (whether Mr. James acted negligently or willfully in engaging such conduct), there exists a strong probability that the Government will succeed on the merits.[9] Thus, this first equitable factor strongly favors granting injunctive relief.

In regards to the second equitable factor, the Court further determines that the threat of irreparable harm that the Government will suffer is significant if injunctive relief is denied. In order to demonstrate irreparable harm, the Government must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). Accordingly, a preliminary injunction must be the only way of protecting the plaintiff from harm and may not be granted to relieve purely economic harm. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988). "Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate." *A. O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and

---

[9] This is not to say that the Government will ultimately prevail on the merits in each and every regard after the parties have had the opportunity to complete discovery and present additional evidence to a fact finder. The Court acknowledges that at the hearing Mr. James's counsel ably raised interpretations of some of the limited evidence and posed questions on cross-examination suggestive of certain potentially plausible defense theories. However, such evidence fails to provide any basis for the Court to conclude at this time that this equitable factor weighs against granting injunctive relief.

energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.' . . . '[T]he availability of adequate monetary damages belies a claim of irreparable injury.'" (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1964); *Frank's GMC*, 847 F.2d at 102)).

The Government has argued that it has no adequate remedy at law absent temporary injunctive relief, because it otherwise "cannot bar [Mr.] James from preparing federal income tax returns with false items" and because Mr. James "is likely to prepare additional fraudulent returns" in the 2011 filing season. Gov't Mem. of Law at 15; *see also* Gov't Suppl. ¶13. Fundamental to the Government's argument is that the preliminary injunctive relief it seeks has a temporality: if granted, such relief would enjoin Mr. James from preparing tax returns containing erroneous, unrealistic or unreasonable positions during the period in which litigation proceeds until its completion, such relief during this period of time is otherwise unavailable in the future. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d at 92-93 (focusing on the temporal aspect of injury to the plaintiff resulting from the possible likely conduct of a defendant "will almost certainly show immediate irreparable harm" (citation omitted)). Although the Government has not shown that every return filed by Mr. James likely contains credits for which taxpayers are ineligible or unsupported or unreasonable positions on deductions and expenses, the Government has established that Mr. James engaged in a pattern of improper conduct with respect to a great many of his clients' returns over the course of several years. It follows that there is a reasonable likelihood that harm to the Government will persist. Without being

enjoined, Mr. James likely will continue to prepare many of his clients' returns improperly throughout the course of this litigation.[10]

The Government's irreparable harm thus is not purely economic, and furthermore the Government's ability to obtain monetary relief from Mr. James directly is limited. The Government can only achieve complete monetary recovery for any losses attributable to a tax preparer's improper conduct from third parties—specifically, a preparer's clients—rather than directly from the preparer. Indeed, a tax preparer's improper conduct is only subject to penalties under the IRC, and such penalties would not necessarily achieve complete monetary recovery. *See, e.g.*, 26 U.S.C. §§ 6694 ("tax return preparer shall pay a penalty with respect to each such return or claim in an amount equal to the greater of $1,000 or 50 percent of the income derived . . . by the tax return preparer"). Moreover, the Government's action against Mr. James arises under statutory provisions that only provide injunctive relief as a possible remedy. *See* 26 U.S.C. §§ 7407, 7408. Accordingly, based on the Government's arguments and evidence presented, the Government has sustained its burden of establishing that it will suffer irreparable harm if temporary injunctive relief is not granted.[11]

---

[10] The Government also provided evidence that although Mr. James was given notice in September 2010 that IRS was investigating his tax preparation activities and that he may face penalties or injunctive action, he has continued to file returns on his clients' behalf that claim credits, expenses, or deductions to which the taxpayer is not entitled. The Court infers from this evidence that Mr. James's course of conduct will likely not change but for this Court granting injunctive relief.

[11] Additionally, the Government arguably may be considered an extension of "the public" in two capacities by representing first the general public, which has an interest in assuring the source of tax revenues owed to the Government, and second the segment of the public that uses or may seek to use Mr. James's services. Thus, irreparable harm to the public resulting from lost tax revenues or personal financial harm can be part of what also may be considered as the Government's irreparable harm. *Cf. Franchi*, 756 F. Supp. at 893-894 (including the harm to the

The Court also finds that the third equitable factor weighs in favor of granting injunctive relief. Here, the Court "must balance the relative harm to the parties, *i.e.*, the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*, 290 F.3d 578, 596 (3d Cir. 2002). As the Court has found, the Government faces likely and significant irreparable harm if injunctive relief is not granted. At the same time, the harm that Mr. James faces if injunctive relief is granted is not nominal since his livelihood would be jeopardized.[12] *See Franchi*, 756 F. Supp. at 894. Nonetheless, in consideration of the alternative injunctive relief sought the Government, the Court finds that the balance of harms favors the Government, because Mr. James would be enjoined from certain enumerated conduct that is subject to penalty under 26 U.S.C. §§ 6701, 6694, but he still would have the ability to act as a tax preparer and maintain his livelihood.

defendant's clients and the general public as part of an irreparable harm analysis).

[12]   Given that Mr. James operates Frika Tax Services, has prepared hundreds of tax returns on behalf of clients per year over the course of several years, and previously worked for H&R Block and Liberty Tax Service, there is sufficient evidence that Mr. James's livelihood is based upon being a tax preparer.

However, the Court recognizes that the balance of the harms is contingent upon the nature of the injunctive relief granted. For example, if Mr. James is preliminarily enjoined from acting as a tax preparer entirely, which is the relief that the Government first sought, he faces a deprivation of his livelihood for an indefinite period of time, albeit not necessarily permanent. When this particular harm is balanced against the Government's irreparable harm, considerable concern arises over the equities of the circumstances, which the Court previously articulated to the parties. However, notwithstanding the Court's concern, because the parties are in accord that it is appropriate, given the circumstances here, for the Court to consider only the Government's alternative injunctive relief, the Court limits its consideration to the Government's alternative relief in its analysis of the equitable factors.

21

Finally, the public interest strongly favors injunctive relief. Based on the evidence presented at the hearing, many of Mr. James's clients, who rely upon him to prepare their federal income tax returns, are likely to suffer harm if Mr. James continues to file returns on their behalf that claim credits for which the taxpayers do not qualify or that contain erroneous, unrealistic or unreasonable positions on expenses and deductions. As a result, these clients are likely to underpay their tax liabilities and bear financial harm by having to pay overdue taxes, interest, and possible penalties.[13] *See Franchi*, 756 F. Supp. at 893. They also may be required to expend considerable time and resources, and, for some, may suffer an emotional toll, in responding to an IRS audit. *See id.* Indeed, at least one of Mr. James's clients who testified at the evidentiary hearing demonstrated just such emotional turmoil. Furthermore, if Mr. James continues his course of improper conduct, the general public and the United States Treasury will suffer at least lost tax revenue properly owed to the Government and the Government expenditures needed to audit returns prepared by Mr. James to obtain payments from taxpayers who underpaid their tax liability. *See id.* at 893, 895.

Accordingly, based upon consideration of the four equitable factors, the Court concludes it is appropriate to grant the Government certain injunctive relief. However, the Court must

[13] At this time, the Court gives little credence to the Government's arguments that Mr. James's clients are somehow a more vulnerable subset of taxpayers because they are "predominantly recent immigrants from Liberia who have limited English-language skills and little knowledge of the complexities of the Internal Revenue Code." Gov't Supp. at ¶ 15. Although these contentions might be able to be shown at trial (and would indeed be a very important consideration worthy of great attention), at the hearing on the Government's Motion the Government failed to present sufficient supporting evidence on this important point. Indeed, the testimony of the witnesses who were Mr. James's clients indicated that their knowledge of the IRC was equivalent to that of the ordinary layman (admittedly, far less than professionally trained persons), and that their English-language skills are in no way diminished. Furthermore, the Court takes judicial notice that the official language of Liberia is English. *See Hammond World Atlas* 244 (Hammond World Atlas Corp. 5th ed. 2008).

22

further decide whether the alternative injunctive relief sought by the Government is appropriate under the circumstances.

Pursuant to the Court's equitable powers, the Court may order a remedy that appropriately addresses the exigencies of the case and protects all affected interests. "[I]t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public—whose interests the injunction may affect." *Brotherhood of Locomotive Eng'rs v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 532 (1960) (citing *Inland Steel Co. v. United States*, 306 U.S. 153, 157 (1939)). Other courts issuing injunctions pursuant to Sections 7407 and 7408 have also recognized this axiom. *See, e.g.*, *Franchi*, 756 F. Supp. 889 (denying the Government's request for permanent injunction to enjoin the defendant from acting as a tax preparer, and only entering a preliminary injunction to enjoin the defendant from preparing any income tax returns); *United States v. Rotzinger*, No. 87-4147, 1988 WL 179794 (C.D. Ill. Jan. 29, 1988) (enjoining defendant from preparing returns that claimed certain credits, refunds, or deductions and requiring the defendant to mail a copy of the Complaint and Court's preliminary injunction order to past customers).

The Court finds that the Government's alternative requested relief, namely enjoining Mr. James from preparing federal income tax returns and amended returns that claim first-time homebuyer credits, Schedule C expenses, or certain Schedule A expenses and miscellaneous deductions, and requiring Mr. James to notify his past and present customers of the Court's injunctive order accompanying this decision, is appropriate under the circumstances present here to protect the interests of the parties and the public. Mr. James's request that the Court's injunctive order permit him to deliver a copy of only the order to his past and present clients by

hand or electronic transmission is not unreasonable, given the expense associated with postal mail delivery to numerous clients. Additionally, consistent with the Court's equitable powers, and in the interests of Mr. James's clients who might rely on Mr. James's services while this injunctive order is in effect, the Court finds it appropriate to require Mr. James to advise his clients that they may need to seek alternative advice and services if the clients appear reasonably entitled to claim a FTHB credit, Schedule C expenses, or certain Schedule A expenses and miscellaneous deductions on a federal income tax return or amended return. For similar reasons, the Court does not find it appropriate for Mr. James's clients to complete the "Customer Disclosure Agreement" that the Government includes in its proposed form of injunctive order.

## CONCLUSION

For the foregoing reasons, the Court grants the Government's Motion subject to the conditions previously articulated. An appropriate Order will issue.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge